Charles Williams THOMPKINS, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 1998-SC-0961-TG.

Supreme Court of Kentucky.

June 14, 2001.

Case Ordered Published by Supreme Court Aug. 23, 2001.

Daniel T. Goyette, J. David Niehaus, Louisville, Counsel for Appellant.

A.B. Chandler, III, Attorney General, State Capitol, Matthew D. Nelson, Assis-

tant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

COOPER, Justice.

Appellant Charles Williams Thompkins was convicted by a Jefferson Circuit Court jury of trafficking in a controlled substance in the first degree. He then pled guilty to being a persistent felony offender in the second degree in exchange for a sentence of twelve years in prison. On appeal of his trafficking conviction, he asserts four claims of error: (1) failure to instruct the jury on criminal facilitation of trafficking in a controlled substance in the first degree; (2) deletion of addresses from juror qualification forms; (3) limitation of cross-examination during a suppression hearing; and (4) admission of the testimony of a co-conspirator, Michael Franklin, who had received a plea agreement in exchange for his testimony. Finding no error, we affirm.

On September 8, 1994, Sergeant David Hogue of the Jeffersontown Police Narcotics Unit received a "tip" from a confidential informant that a black male suspect known as "Mario" was attempting to sell two kilograms of cocaine. The informant gave Hogue Mario's telephone number and advised him that Mario lived "somewhere off Dixie Highway between the Watterson Expressway and Louisville." Hogue determined that the telephone number was assigned to Willie J. Morrow, 2711 Allston Avenue, Louisville, Kentucky. Proceeding to that address, Hogue discovered a red Ford Mustang automobile with a Kentucky license plate parked in front of the residence. The vehicle was registered to James L. Morrow. A criminal records check revealed that James L. Morrow had a history of prior arrests for trafficking in controlled substances. Hogue obtained a photograph of Morrow and showed it to the informant who identified Morrow as being "Mario."

Hogue and Detective Greg Treadway began a surveillance of Morrow. The record is unclear whether this occurred at the 2711 Allston Avenue residence of "Willie J. Morrow," or at another residence in the 1700 block of Dixdale, or both. According to Michael Franklin, he, Morrow and Appellant spent the night of September 8—9 at the Allston Avenue residence, then left the next morning and proceeded to the Dixdale residence. Regardless, Hogue testified that three vehicles were parked in front of the surveilled residence, Morrow's red Mustang, a Jeep Wagoneer with Ohio license plates, later determined to belong to Appellant, and a Chevrolet Blazer, later determined to belong to Jimi Che Carr. Morrow left the surveilled residence on several occasions to use a pay telephone at a nearby Dairy Mart. On one such occasion, Hogue approached the pay phone and overheard Morrow say, "Are you going to get the sh-- or not? These guys are ready to leave." Morrow then returned to the residence.

Approximately forty minutes later, Morrow and five other black males exited the house carrying luggage and bags. Appellant, Michael Franklin, and Nathaniel Dancy all entered the Jeep Wagoneer, Appellant in the driver's seat, Dancy in the front passenger seat, and Franklin in the back seat. Morrow entered his red Ford Mustang. Carr and Anthony Anderson entered the Chevrolet Blazer. All three vehicles then proceeded "convoy-style" to the intersection of Dixie Highway and Algonquin Parkway where they were stopped by Hogue, Treadway, and other officers of the Metro Narcotics Unit. As Treadway approached the passenger side of Appellant's vehicle, he noticed two kilograms of cocaine in an open brown grocery bag in plain view on the floorboard.

Michael Franklin and Nathaniel Dancy were residents of Los Angeles, California. Pursuant to a plea agreement, Franklin became a witness for the Commonwealth. He testified that Dancy and a man named Charles Thompson had arranged to deliver two kilograms of cocaine to Morrow who planned to sell it to an unidentified third party. Franklin's job was to transport the cocaine from Los Angeles by commercial airline and deliver it to Dancy, who was already in Louisville, then to return to California with Thompson's share of the money from the sale. On September 8, 1994, Franklin arrived in Louisville with a suitcase containing two kilograms of cocaine and checked into a local Holiday Inn. Dancy and Appellant subsequently arrived at the hotel in Appellant's Jeep Wagoneer. Franklin put the suitcase containing the cocaine in the Jeep and the three then proceeded to Morrow's residence. Once inside, Dancy opened the suitcase, whereupon Dancy, Morrow and Appellant all examined the cocaine. On the following morning, Franklin, Dancy, Morrow and Appellant proceeded to a McDonald's restaurant for breakfast, then to the house on Dixdale where they were joined by Carr and Anderson. According to Franklin, there seemed to be a problem with the purchase money and Morrow left the house several times to make telephone inquiries about the problem.

Finally, the six men departed the Dixdale residence in three different vehicles. Appellant, Franklin and Dancy left in Appellant's Jeep. Franklin testified that he did not realize the cocaine was no longer in the suitcase until he saw it on the floorboard of Appellant's vehicle shortly before they were stopped by the police.

## I. FAILURE TO INSTRUCT ON CRIMINAL FACILITATION.

The trial judge instructed the jury that Appellant could be found guilty as either principal or accomplice to trafficking in a controlled substance in the first degree. Appellant claims it was error for the trial judge not to instruct the jury on criminal facilitation of trafficking as a lesser included offense of complicity.

KRS 502.020(1) (complicity) provides in pertinent part:

A person is guilty of an offense committed by another person when, *with the intention of promoting or facilitating the commission of the offense,* he:

(a) Solicits, commands, or engages in a conspiracy with such other person to commit the offense; or

(b) Aids, counsels, or attempts to aid such person in planning or committing the offense. (Emphasis added.)

KRS 506.080(1) (facilitation) provides:

A person is guilty of criminal facilitation when, acting with knowledge that another person is committing or intends to commit a crime, he engages in conduct which knowingly *provides such person with means or opportunity for the commission of the crime* and which in fact aids such person to commit the crime. (Emphasis added.)

Under either statute, the defendant acts with knowledge that the principal actor is committing or intends to commit a crime. Under the complicity statute, the defendant must intend that the crime be committed; under the facilitation statute, the defendant acts without such intent. Facilitation only requires provision of the means or opportunity to commit a crime, while complicity requires solicitation, conspiracy, or some form of assistance. *Skinner v. Commonwealth, Ky.,* 864 S.W.2d 290, 298 (1993). "Facilitation reflects the mental state of one who is 'wholly indifferent' to the actual completion of the crime." *Perdue v. Commonwealth,*

*Ky.,* 916 S.W.2d 148, 160 (1995), *cert. denied,* 519 U.S. 855, 117 S.Ct. 151, 136 L.Ed.2d 96 (1996).

"An instruction on a lesser-included offense is appropriate if and only if on the given evidence a reasonable juror could entertain reasonable doubt of the defendant's guilt of the greater charge, but believe beyond a reasonable doubt that the defendant is guilty of the lesser offense." *Skinner v. Commonwealth, supra,* at 298. In *Webb v. Commonwealth, Ky.,* 904 S.W.2d 226 (1995), we held it was error not to instruct on facilitation where the defendant testified that he gave his girlfriend a ride in his car knowing that she was in the process of a drug transaction, but that he did not intend that she commit the crime. *Id.* at 229. Appellant claims the same reasoning applies in this case. Here, however, Appellant did not testify; and the only evidence the jury heard was that Appellant and Dancy met Franklin at the Holiday Inn; that Dancy loaded the suitcase containing the cocaine into Appellant's vehicle; that Appellant drove Dancy and Franklin to Morrow's residence where Dancy, Morrow and Appellant all inspected the cocaine; that the cocaine was apparently removed from the suitcase and placed in a grocery bag on the floorboard of Appellant's vehicle; and that Appellant, the two Californians, and the cocaine were all in Appellant's vehicle when it was stopped.

Appellant's tendered facilitation instruction embodied a theory that Appellant knew Franklin and Dancy were engaged in a drug transaction, but that he was transporting these two strangers from California to the location of their intended drug deal out of the goodness of his heart, wholly indifferent to the actual completion of the crime, i.e., without the intent that the crime be committed. Nothing in the evidence supports such a theory. If Ap-

pellant was not involved in the drug transaction or did not intend for Franklin and Dancy to consummate it, why were they and the cocaine in his vehicle instead of in Morrow's vehicle? The duty to instruct on any lesser included offenses supported by the evidence does not require an instruction on a theory with no evidentiary foundation. *Houston v. Commonwealth, Ky.,* 975 S.W.2d 925, 929 (1998). The jury is required to decide a criminal case on the evidence as presented or reasonably deducible therefrom, not on imaginary scenarios. Appellant was not entitled to a facilitation instruction in this case.

## II. DELETION OF JURORS' ADDRESSES.

Appellant asserts it was error for the trial judge to protect the jurors from potential retaliation by deleting their addresses from the jury qualification forms. We have recently decided this issue adversely to Appellant's position. *Cornelison v. Commonwealth, Ky.,* 990 S.W.2d 609, 610 (1999); *Samples v. Commonwealth, Ky.,* 983 S.W.2d 151, 153 (1998). Our opinion of this issue is unchanged.

## III. LIMITATION OF CROSS-EXAMINATION RE INFORMANT.

This alleged error occurred not at trial but at a pretrial suppression hearing, at which the issue was whether the arresting officers had sufficient reasonable suspicion to support a *Terry* stop. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). One issue affecting this decision was whether the confidential informant who provided Sergeant Hogue with the initial "tip" was a reliable informant. Since the informant was only a "tipster" and not a material witness, the Commonwealth invoked its privilege not to reveal his/her identity. KRE 508. Utilizing the

procedure authorized by KRE 508(d),[1] the prosecutor provided the trial judge with an affidavit regarding the informant's reliability. After reviewing the affidavit *in camera*, the trial judge concluded that the informant was sufficiently reliable for his/her information to provide reasonable suspicion sufficient to support the stop. (We have also reviewed the affidavit and agree with that conclusion.)

▆▆▆▆ Following the trial judge's ruling, Appellant sought to cross-examine Hogue, ostensibly with respect to the reliability of the informant. However, many of Appellant's questions pertained more to the informant's identity than to his reliability. The trial judge refused to permit any questions on cross-examination that might lead to the identity of the informant and, thus, violate the privilege. Appellant claims the trial judge thereby violated his confrontation right under the Sixth Amendment to the United States Constitution and Section 11 of the Constitution of Kentucky. We rejected this same argument in *Taylor v. Commonwealth*, Ky., 987 S.W.2d 302, 304–05 (1998), *cert. denied*, 528 U.S. 901, 120 S.Ct. 239, 145 L.Ed.2d 200 (1999). The right of confrontation pertains to the method by which evidence is produced at trial. *Harris v. Commonwealth*, Ky., 315 S.W.2d 630, 632 (1958). The Confrontation Clause does not give a defendant the right to discover the identity of an informant at a pretrial hearing under the guise of attacking his/her "reliability." *Taylor, supra; see also McCray v. Illinois*, 386 U.S. 300, 311–13, 87 S.Ct. 1056, 1062–64, 18 L.Ed.2d 62 (1967).

Appellant's reliance on *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990) is misplaced. There, the United States Supreme Court held that while an *anonymous* telephone tip providing detailed information, standing alone, would not justify a *Terry* stop, subsequent corroboration of most of the details provided by the "tipster" created a reasonable suspicion sufficient to warrant the stop. *Id.* at 330, 110 S.Ct. at 2416. Here, the initial information advising of a potential drug transaction was provided by a known informant. The telephone number supplied by the informant led Hogue to a residence where he discovered a vehicle registered to the suspect identified by the informant. Appellant's vehicle was also at the residence. Hogue overheard the original suspect engaging in a suspicious telephone conversation. Finally, Hogue observed Appellant and the suspect exit the residence together with four other men and depart in a "convoy" of three vehicles, including Appellant's Jeep and the suspect's Mustang. Under *Alabama v. White, supra*, the stop in this case would have been justified even if the initial information had been supplied by an anonymous informant whose reliability could not be ascertained. We conclude that no error occurred with respect to the conduct of the suppression hearing in this case.

## IV. FAILURE TO SUPPRESS FRANKLIN'S TESTIMONY.

▆▆▆▆ Appellant did not preserve this claimed error for review. His theory is that one who has received a plea bargain

---

1. KRE 508, as originally drafted, did not include a subsection (d). The procedure for providing sealed evidence to the court for an *in camera* inspection was intended to apply to both civil and criminal cases. "The rule contemplates the taking of evidence *in camera* so that the court may determine the significance of the informer to the issues in the case without first compromising the informer's anonymity." Commentary to KRE 508, Evidence Rules Study Commission (Final draft 1989). When the Legislative Research Commission compiled the rules, it (presumably inadvertently) divided KRE 508(c) into two subsections so that the provision now appears to apply only to informants in civil cases.

in exchange for an agreement to testify should not be permitted to testify. (!) In support of this novel proposal, he cites *United States v. Singleton,* 144 F.3d 1343 (10th Cir.1998), a decision by a three-judge panel of the United States Court of Appeals for the Tenth Circuit. That panel was purporting to apply to plea agreements a federal statute that penalizes "whoever ... gives, offers, or promises anything of value ... for or because of testimony." 18 U.S.C. § 201(c)(2). Kentucky has no similar statute. More significantly, the decision of the three-judge panel in *Singleton* was vacated on rehearing by the full Tenth Circuit Court of Appeals sitting *en banc, United States v. Singleton,* 165 F.3d 1297 (10th Cir.1999), thus has no precedential value whatsoever. As did the Tenth Circuit, we reject this proposition as detrimental to the essential administration of justice.

Accordingly, the judgment of conviction and sentence imposed by the Jefferson Circuit Court are affirmed.

LAMBERT, C.J., GRAVES, JOHNSTONE, KELLER and WINTERSHEIMER, JJ., concur.

STUMBO, J., dissents by separate opinion.

STUMBO, Justice, dissenting.

Respectfully, I must dissent from the majority's holding that Thompkins was not entitled to an instruction on facilitation.

At the close of the evidence, Appellant tendered jury instructions that included an instruction for criminal facilitation as a lesser included offense of complicity to drug trafficking. The trial judge denied the instruction, maintaining that Appellant had not presented evidence for a facilitation instruction. Appellant believes this was error, and I agree. As we stated in *Taylor v. Commonwealth, Ky.,* 995 S.W.2d 355 (1999):

> In a criminal case, it is the duty of the trial judge to prepare and give instructions on the whole law of the case, and this rule requires instructions applicable to every state of the case deducible or supported to any extent by the testimony. A defendant has a right to have every issue of fact raised by the evidence and material to his defense submitted to the jury on proper instructions.

(citations omitted). *Id.* at 360.

Complicity, the offense with which Thompkins was convicted, requires "the intention of promoting or facilitating the commission of the offense" and that the person "(a) Solicits, commands, or engages in a conspiracy with such other person to commit the offense; or (b) Aids, counsels, or attempts to aid such person in planning or committing the offense; or (c) Having a legal duty to prevent the commission of the offense, fails to make a proper effort to do so." KRS 502.020(1).

On the other hand, a person is guilty of facilitation if, "acting with knowledge that another person is committing or intends to commit a crime, he engages in conduct which knowingly provides such person with means or opportunity for the commission of the crime and which in fact aids such person to commit the crime." KRS 506.080(1). As we explained in *Chumbler v. Commonwealth, Ky.,* 905 S.W.2d 488, 499 (1995), the main difference between facilitation and complicity is the "state of mind of the defendant." Citing *Luttrell v. Commonwealth, Ky.,* 554 S.W.2d 75 (1977), we confirmed the belief that a person is guilty of facilitation if he provided another with the means of committing a crime, and also had the knowledge that the other person would commit the crime, but the facilitator had no intent to promote or

"contribute to its fruition." Complicity, however, requires a furnishing of the means to commit the crime, plus an intent to aid in its commission. *Chumbler*, 905 S.W.2d at 499.

The majority acknowledges the differences between facilitation and complicity, but asserts that a facilitation instruction is only proper if a juror could entertain doubt that the defendant was an accomplice to a crime but believes instead that he was a facilitator. *Skinner v. Commonwealth*, Ky., 864 S.W.2d 290, 298 (1993). Further, the majority argues that since Appellant did not testify, the trial court was limited to instructing the jury on reasonable inferences drawn from the proof and nothing in the evidence suggests that Appellant did not intend for the crime to be committed. In support of this proposition, the majority recites evidence that Appellant and Dancy met Franklin at the Holiday Inn; that Dancy, the alleged supervisor of the drug deal, loaded the suitcase containing cocaine into Appellant's car; that Appellant arrived at Morrow's house with Dancy; and that Appellant inspected the cocaine while at Morrow's house. The majority also finds it relevant that the cocaine was found on the floorboard of Appellant's vehicle. The majority of this evidence, however, was introduced at trial through the testimony of Michael Franklin, an accomplice who made a deal to testify on behalf of the Commonwealth.

While all these facts may be persuasive that Appellant Thompkins was a co-conspirator, they are not dispositive of the issue. The jury could reasonably disbelieve the testimony of Michael Franklin, especially since he was testifying to reduce his sentence. The other evidence introduced regarding Thompkins' conspiring to traffic is far from compelling. In fact, Franklin conceded in his testimony that he had never heard of Thompkins, was never

given instructions that Thompkins would handle anything, never heard Thompkins refer to the cocaine as his, ask for any money for the sale, or say that he knew someone who would purchase the drugs. I believe the jury could have easily found that Thompkins was merely there to drive some of the co-defendants around, and facilitate the trafficking, but did not care one way or the other if the deal actually happened. If that were the case, the jury should have been able to convict Thompkins of facilitation. I would therefore hold that the trial court erred in not admitting an instruction for facilitation, and reverse and remand Thompkins' conviction to the Jefferson Circuit Court for a new trial consistent with this opinion.