Albert SPRINGFIELD, Appellant

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2012–SC–000370–MR.

Supreme Court of Kentucky.

Sept. 26, 2013.

Katie L. Benward, Assistant Public Advocate, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, Gregory C. Fuchs, Assistant Attorney General, Counsel for Appellee.

Opinion of the Court by Justice SCOTT.

A Hopkins County Circuit Jury found Appellant, Albert Springfield, guilty of trafficking in a controlled substance in the first degree and of being a persistent felony offender (PFO) in the first degree. He was sentenced to the maximum of five years' imprisonment, which was enhanced to twenty years' imprisonment due to his

status as a PFO. He now appeals as a matter of right, Ky. Const. § 110(2)(b), alleging that the trial court erred by (1) allowing the jury to re-watch videotapes while in the jury deliberation room, (2) failing to instruct the jury on the offense of criminal facilitation to trafficking in a controlled substance in the first degree, (3) excusing a potential juror for cause based on his religious views, and (4) denying Appellant's request for an instruction of second-degree PFO. For the following reasons, we affirm.

## I. BACKGROUND

On December 24, 2010, Appellant and some friends were at his apartment when an acquaintance, Tina Eisenhower, stopped by to purchase some crack cocaine. However, Appellant did not have any crack at his apartment, so he left to go get some as, according to him, a "favor." Unbeknownst to Appellant, Eisenhower had started her own "personal war against crack cocaine."

Eisenhower had an arrangement with Deputy Sheriff Shawn Bean of the Hopkins County Sheriff's Department to purchase $30 worth of crack from Appellant. Bean provided Eisenhower with a spy camera, microphone, and $30 for the purpose of catching Appellant in the act. After making the purchase from Appellant, Eisenhower met with Bean to give him the crack and recording device. For her efforts, Eisenhower received $100 in cash as payment.[1]

Eight months later, Appellant was indicted by a Hopkins County Grand Jury for first-degree trafficking in a controlled substance, a Class D felony, and for being a first-degree PFO. The case proceeded to a jury trial, and the jury returned a verdict finding Appellant guilty of trafficking

cocaine. After the Hopkins Circuit Court Clerk testified during the penalty phase and introduced evidence to establish Appellant's prior convictions, the jury also found him guilty of being a first-degree PFO and recommended that he be sentenced to the maximum, twenty years' imprisonment. The trial court adopted the jury's recommendation.

## II. ANALYSIS

### A. Excused Juror for Religious Views

Appellant first argues that the trial court erred to his substantial prejudice when it denied him his right to a randomly selected jury. Specifically, Appellant alleges that that the trial court erroneously excused a potential juror based upon his religious views. "Longstanding Kentucky law has held that a trial court's decision on whether to strike a juror for cause must be reviewed for abuse of discretion." *Shane v. Commonwealth,* 243 S.W.3d 336, 341 (Ky.2007) (*citing Adkins v. Commonwealth,* 96 S.W.3d 779 (Ky.2003)); *Pendleton v. Commonwealth,* 83 S.W.3d 522 (Ky.2002).

In voir dire, the Commonwealth asked if anyone on the jury panel had personal or religious beliefs that would prevent them from sitting in judgment of another person. One juror asked to approach the bench, where he explained that "I don't feel like I should judge no one. Like, I don't feel like it's my right, it's my place." The trial judge then asked him what this belief was based upon and he stated, "Joshua, the Messiah." He agreed with the judge that he had religious beliefs that may prohibit him from sitting in judgment.

---

1. Eisenhower had an ongoing arrangement with Bean and she received $100 every time she purchased a controlled substance from someone in this manner.

However, after further questioning the juror did report that he "guesses" he could render a verdict after hearing all of the evidence. Both parties discussed the juror and the judge came to the conclusion that if either party wished to strike, then he would strike the juror. The Commonwealth moved to strike stating: "[H]e's just been kind of wishy-washy about whether he could actually do it or not. You know, if he's told to, he guesses he could. But once he got back in, then we have to have a unanimous verdict either way. And I think, you know, that there's a possibility that if he got picked up as one of the twelve, we might not have one either way."

Appellant argues that the potential juror was unjustifiably excused for cause simply because he was "not prosecution prone." Furthermore, Appellant alleges that the trial judge's error destroyed the required randomness of the jury selection process and therefore a new trial is required.

However, as was previously established, a trial court's decision as to whether or not to strike a juror for cause must be reviewed for abuse of discretion. *Shane*, 243 S.W.3d at 338. "'Abuse of discretion in relation to the exercise of judicial power implies arbitrary action or capricious disposition under the circumstances, at least an unreasonable and unfair decision.' ... The exercise of discretion must be legally sound." *Allen v. Devine*, 178 S.W.3d 517, 523 (Ky.App.2005) (*quoting Kuprion v. Fitzgerald*, 888 S.W.2d 679, 684 (Ky.1994)).

In the present case the potential juror stated that he could not stand in judgment of another human being, and "guesses" he could listen to the facts of the case and render a verdict. The judge even expressed concern as to whether the juror possessed the ability to listen to the evidence and render an unbiased verdict, one that was not influenced by his religious convictions.

Appellant argues that, "the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process." *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). However, the juror in question expressed that he could not fairly judge another person and thus he admitted that he was not qualified as a juror. It is for this reason that by striking the juror, the trial court was in fact attempting to achieve a jury panel that was qualified to sit in judgment. The trial court used sound legal judgment in making this decision based upon the information provided by the potential juror.

It is for these reasons that this Court does not find that the trial court abused its discretion in striking the juror for cause.

### B. Evidence Taken to Jury Room

■■■ Appellant's first argument is that the trial court erred to his substantial prejudice by allowing the jury to view a videotape of the actual drug transaction outside his presence, unsupervised, in the jury deliberation room. We review a trial court's evidentiary rulings for an abuse of discretion. *Anderson v. Commonwealth*, 231 S.W.3d 117, 119 (Ky.2007) (*citing Woodard v. Commonwealth*, 147 S.W.3d 63 (Ky.2004)). "The test for an abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* (*citing Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky.2000)).

Eisenhower had a video camera and microphone hidden in her purse when she made the buy from Appellant. During Appellant's trial, this video and audio recording was played for the jury and a copy

was introduced into evidence by the Commonwealth. After the jury retired to deliberate, they sent a note to the judge asking to watch it again. Defense counsel stated that she did not object to the jury watching the video in the courtroom, but did object to it being played outside the court's presence. Ultimately, the trial court overruled the objection, and allowed the jury to play it in the jury deliberation room.

Appellant argues that this violated the Confrontation Clause of the Sixth Amendment which encompasses the right of criminal defendant to "be confronted with the witnesses against him." Appellant argues that he has a constitutional right to be present at all stages of his trial, including the replaying of tapes in connection with jury deliberations.

RCr 9.72 limits the materials that a jury may review during deliberations:

Upon retiring for deliberation the jury may take all papers and other things received as evidence in the case. The jurors shall be permitted to take into the jury room during their deliberations any notes they may have made during the course of the trial, but upon request of either party the jury shall be admonished that the notes made by jurors shall not be given any more weight in deliberation than the memory of other jurors.

RCr 9.74 also limits the jury's access to information once the case has been submitted. This rule states:

No information requested by the jury or any juror after the jury has retired for deliberation shall be given except in open court in the presence of the defendant (unless the defendant is being tried in absentia) and the entire jury, and in the presence of or after reasonable notice to counsel for the parties.

Appellant argues that under these rules, it is clear that electronic equipment is not allowed to be given to the jury during deliberations, and *any* information given to the jury must be done in open court in the presence of the defendant.

We disagree with Appellant's argument in this instance. The trial court ultimately has the discretion to allow or disallow certain exhibits into the jury deliberation room. *Johnson v. Commonwealth*, 134 S.W.3d 563, 567 (Ky.2004). Moreover, concerns that a jury will place an undue emphasis on evidence present in the jury deliberation room generally arise in the context of exhibits that are testimonial in nature. *E.g.*, *Burkhart v. Commonwealth*, 125 S.W.3d 848, 850 (Ky.2003). For instance, today we also rendered *McAtee v. Commonwealth*, No. 2011–SC–000259 (Ky. Aug. 29, 2013), in which we held that a video recording of a witness's testimony was testimonial in nature and thus viewing in the jury room was impermissible.

On the other hand, "[n]ontestimonial exhibits ... which are verbal in nature, are generally allowed to go into the [jury room]." *Id.* (quoting *Chambers v. State*, 726 P.2d 1269, 1275 (Wyo.1986)).

Here, we believe that the video and audio recording of the actual drug transaction falls within the realm of non-testimonial evidence and thus was properly allowed in the jury room. While this Court does not have any prior decisions directly on point, other jurisdictions provide us with guidance in making this determination. *New Hampshire v. Dugas*, 147 N.H. 62, 782 A.2d 888, 896 (2001) (holding that a store surveillance video was non-testimonial evidence and thus permissible in the jury deliberation room); *State v. Monroe*, 146 N.H. 15, 766 A.2d 734, 736 (2001) (holding that videotapes and audiotapes are admitted as exhibits into evidence as non-testimonial,

tangible exhibits); *Washington v. Castellanos,* 132 Wash.2d 94, 935 P.2d 1353, 1356–57 (1997) (en banc) (holding that secret audio-tape recording of a drug transaction was non-testimonial evidence); *Pino v. State,* 849 P.2d 716, 719 (Wyo. 1993) (holding microphone recordings of drug transactions are not testimonial). In fact, items such as these are real life replays of the central event in question. As such, they are similar to photographic evidence and the same rules should apply. Therefore, the decision of the trial court to allow the jury to review the video outside of the defendant's presence is supported by sound legal principles.

For the aforementioned reasons, we find that the trial court did not abuse its discretion in allowing the jury to review this audio and video recording in the jury deliberation room.

### C. Failure to Instruct Jury on Criminal Facilitation

■■■ Appellant argues that the trial court erred to his substantial prejudice by failing to instruct the jury on first-degree criminal facilitation to trafficking in a controlled substance. Specifically, Appellant alleges that the evidence presented on his behalf was sufficient to support an instruction of criminal facilitation. We review the refusal to give a jury instruction of a lesser-included offense by the 'reasonable juror' standard established in *Allen v. Commonwealth:*

> As noted, we review a trial court's decision not to give a criminal offense jury instruction under the same "reasonable juror" standard we apply to the review of its decision to give such an instruction. *See Commonwealth v. Benham,* 816 S.W.2d 186 (Ky.1991). Construing the evidence favorably to the proponent of the instruction, we ask whether the evidence would permit a reasonable juror to make the finding the instruction

authorizes. We typically do not characterize our review under this standard as either *de novo* or for abuse of discretion, but in some recent cases we have and it may appear that we have done so inconsistently.

*See Hunt v. Commonwealth,* 304 S.W.3d 15, 31 (Ky.2009) ("The trial court's decision not to give a jury instruction is reviewed for abuse of discretion."); *Cecil v. Commonwealth,* 297 S.W.3d 12, 18 (Ky.2009) ("We review the trial court's rulings with respect to jury instructions for abuse of discretion."); *Morrow v. Commonwealth,* 286 S.W.3d 206, 209 (Ky.2009) ("Because this matter turns on the trial court's determination as to whether to tender a jury instruction, we will engage in a *de novo* review."). In this context, the characterization makes little difference and so the inconsistency is more apparent than real. On the one hand, if the evidence supports an instruction that is otherwise appropriate, the proponent is entitled to the instruction as a matter of law, and to emphasize that entitlement, as we did in *Morrow,* our review can be characterized as *de novo.* On the other hand, to emphasize that the sufficiency of the evidence is measured against a reasonableness standard—the reasonable juror—as we did in *Cecil,* our review can be characterized as for abuse of discretion. Regardless of the characterization, however, the "reasonable juror" is the operative standard, in the appellate court as well as in the trial court.

338 S.W.3d 252, 255 (Ky.2011). Therefore, in evaluating the refusal to give an instruction we must ask ourselves, construing the evidence favorably to the proponent of the instruction, whether the evidence would permit a reasonable juror to make the finding the instruction authorizes.

Prior to trial, Appellant's attorney tendered proposed written jury instructions, which included instructions on entrapment and criminal facilitation to trafficking in a controlled substance. The Commonwealth objected to both of these instructions. A brief hearing was held and defense counsel withdrew the entrapment instruction. However, she did not withdraw the criminal facilitation instruction based upon the fact that, in her view, Appellant's culpability could be perceived as merely facilitation of the police informant's criminal conduct.

■ Appellant argues that the jury could have found that he was merely facilitating the offense of trafficking in a controlled substance, and thus it should have been instructed accordingly. However, "'[a]n instruction on a lesser-included offense is appropriate if and only if on the given evidence a reasonable juror could entertain reasonable doubt of the defendant's guilt of the greater charge, but believe beyond a reasonable doubt that the defendant is guilty of the lesser offense.'" *Thompkins v. Commonwealth*, 54 S.W.3d 147, 151 (Ky.2001) (*quoting Skinner v. Commonwealth*, 864 S.W.2d 290, 298 (Ky. 1993)).

No evidence whatsoever was presented in the case at bar that Appellant was guilty of facilitation. Much like the present case, in *Thompkins*, the defendant sought to have the jury instructed on completely imaginary scenarios for which no evidentiary basis existed:

> Appellant's tendered facilitation instruction embodied a theory that Appellant knew Franklin and Dancy were engaged in a drug transaction, but that he was transporting these two strangers from California to the location of their intended drug deal out of the goodness of his heart, wholly indifferent to the actual completion of the crime, i.e., without the intent that the crime be committed.

> Nothing in the evidence supports such a theory. If Appellant was not involved in the drug transaction or did not intend for Franklin and Dancy to consummate it, why were they and the cocaine in his vehicle instead of in Morrow's vehicle? The duty to instruct on any lesser included offenses supported by the evidence does not require an instruction on a theory with no evidentiary foundation. *Houston v. Commonwealth*, 975 S.W.2d 925, 929 (Ky.1998). The jury is required to decide a criminal case on the evidence as presented or reasonably deducible therefrom, not on imaginary scenarios. Appellant was not entitled to a facilitation instruction in this case.

*Id.* In *Thompkins*, we held that the trial court did not err in refusing to provide a jury instruction on the lesser-included offense of facilitation as no reasonable juror would have been able to convict the defendant of facilitation based upon the evidence presented. We hold the same here.

KRS 218A.010(40) defines trafficking as "... to manufacture, distribute, dispense, or sell a controlled substance." Simply distributing or selling a controlled substance constitutes trafficking, and, therefore, if the jury found (as it did) that Appellant obtained and sold the crack to Eisenhower, it could (and did) find Appellant was guilty of trafficking. No evidence was presented to support a criminal facilitation instruction and, therefore, the trial court was correct in not providing it to the jury. *Thompkins*, 54 S.W.3d at 151.

■ Furthermore, KRS 506.080 defines criminal facilitation as "acting with knowledge that another person is committing or intends to commit a crime, he engages in conduct which knowingly provides such person with means or opportunity for the commission of the crime and which in fact aids such person to commit the crime." "Facilitation reflects the mental state of

one who is 'wholly indifferent' to the actual completion of the crime." *Id. (quoting Perdue v. Commonwealth,* 916 S.W.2d 148, 160 (Ky.1995)).

While it is true that by selling crack to Eisenhower, Appellant "facilitated" her in what he thought was the commission of a crime, it does not absolve him of his own criminal liability for selling it to her. Facilitation only reflects the mental state of one who is "wholly indifferent" to the completion of the crime, and in this case Appellant was fully aware that he was in fact obtaining and selling drugs. He did not provide another person the "means or opportunity" to commit a crime, he, instead, committed a crime himself. Furthermore, we would like to point out that while Appellant argues that he should have received an instruction on the "lesser-included offense" of facilitation, facilitation is *not* a lesser-included offense of trafficking, but merely a lesser-culpability situation. Regardless of the classification, no evidence was presented to allow a reasonable juror to find Appellant guilty of facilitation. For these reasons, we find no error in the trial court's refusal to instruct the jury on facilitation.

### D. Second–Degree PFO Jury Instruction

■■■ Finally, Appellant argues that the trial court erred to his substantial prejudice when it denied his request for an instruction on second-degree PFO. Specifically, Appellant argues that a jury does not have to believe all of the proof put on by the Commonwealth, and thus should have been given the option to sentence him as a second-degree PFO. Implementing the previously established reasonable juror standard, in evaluating the refusal to give a jury instruction, we must ask, construing the evidence favorably to the proponent of the instruction, whether the evidence would permit a reasonable juror to make

the finding the instruction authorizes. *Allen,* 338 S.W.3d at 255.

Appellant's counsel requested a jury instruction on second-degree PFO, which was ultimately denied by the trial judge. Appellant argues that the evidence in support of such an instruction came from Karen McKnight, Hopkins County Clerk. McKnight testified that Appellant's prior convictions included: 1) possession of cocaine for which he received a five-year sentence; and 2) trafficking in cocaine for which he received three five-year sentences to run concurrently.

Defense counsel did not argue that the evidence was insufficient to submit an instruction on first-degree PFO, but argued instead that the jury had a right to disbelieve some of the Commonwealth's evidence, and therefore could have returned a verdict in favor of second-degree PFO.

While it is true that a jury is free to disbelieve the Commonwealth's evidence, this Court held in *Payne v. Commonwealth,* 656 S.W.2d 719, 721 (Ky.1983), that when it comes to PFO proceedings if a jury believes any of the Commonwealth's evidence then it must believe it all. In *Payne,* this Court held:

> It is well settled by this Court that if the evidence warrants instructing on a lesser degree of the offense, the instruction must be given. It is equally well settled that instruction on a lesser degree may be rejected if the evidence does not warrant it. . . . The same rule should obtain in persistent felony offender cases. . . . First-degree felony offender is one charge. The fact that two convictions must be proven does not justify breaking down the charge into two parts so as to give the jury the opportunity to pass on each prior conviction in the absence of some evidence bringing one or both prior convictions into dispute. . . . [W]e

adhere to the proposition that the jury was not compelled to believe this evidence and make a finding of guilty, but even though we adhere to this proposition we believe it does not follow that the jury has the right to be capricious and ignore one conviction and believe the other where the convictions are not denied. The two convictions represent the charge, and with no other evidence putting one or both in issue there is no evidentiary basis for instructing on both convictions.

*Id.*

Therefore, in order to convict Appellant as a second-degree PFO, the jury would have to believe at least part of the proof presented by the Commonwealth, that he had previously been convicted of another felony charge. However, it would also require the jury to disbelieve a part of the proof which, according to *Payne*, is impermissible absent evidence calling that proof into question. When it comes to the presentation of proof for PFO status, the jury must take the Commonwealth's proof all-or-nothing "in the absence of some evidence bringing one or both prior convictions into dispute." *Id.* at 721. That is to say, the jury cannot accept part as true and question the rest unless there is an evidentiary basis for disregarding a prior conviction. Therefore, in the instant case, an instruction as to second-degree PFO would require the jury to make a decision contrary to the law as it stands, and a reasonable juror could not make the decision that the instruction authorizes. A jury considering a PFO charge is free to disbelieve a conviction if there is an evidentiary base for doing do, but in the present case there was no evidence to justify disregarding the Commonwealth's proof. It is for this reason that we find no error in the trial court's refusal to instruct the jury on second-degree PFO status. Furthermore, the PFO instruction given to the jury was actually in Appellant's favor, given that by instructing the jury on first-degree PFO only, the jury would have to aquit him of the PFO altogether if it believed that he had only one prior conviction.

### III. CONCLUSION

For the aforementioned reasons we affirm Appellant's convictions and sentence.

All sitting. All concur.