RENDERED: DECEMBER 14, 2017
TO BE PUBLISHED

# Supreme Court of Kentucky

2015-SC-000639-DG

JEROME HAWKINS                                      APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.                       CASE NO. 2014-CA-000594-DG
HENDERSON CIRCUIT COURT NO. 13-CR-00251

COMMONWEALTH OF KENTUCKY                      APPELLEE

## OPINION OF THE COURT BY JUSTICE WRIGHT

### AFFIRMING

A circuit court jury convicted Jerome Hawkins of trafficking in four or more grams of cocaine and other charges. The Commonwealth's evidence showed that police seized from Hawkins more than eighteen grams of a white substance appearing to be crack cocaine. Later laboratory testing confirmed the seized substance actually contained some amount of cocaine. But Hawkins argues that he was improperly convicted of this particular crime because the Commonwealth's evidence failed to show that the substance seized contained four or more grams of pure cocaine. On discretionary review, we affirm the judgment of the Court of Appeals.

## I.     FACTUAL AND PROCEDURAL BACKGROUND.

Based on information provided by a confidential informant (CI), Detective Brad Newman obtained a search warrant for Hawkins's home and one of his

vehicles. The resulting search disclosed more than eighteen grams of a white substance appearing to be crack cocaine, nearly one pound of marijuana, digital scales, and more than $4,000 in cash. Inside Hawkins's vehicle police recovered what appeared to be more cocaine, pills, and cash. The grand jury indicted Hawkins on charges of first-degree trafficking in a controlled substance (cocaine, four grams or more),[1] trafficking in marijuana (over eight ounces),[2] and of being a first-degree PFO.[3]

In a pretrial motion, Hawkins moved the trial court to compel the Commonwealth to reveal the identity of the CI, arguing that it was relevant and essential to the defense of his case. The trial court conducted an evidentiary hearing on the motion and questioned Detective Newman in camera. The trial court ruled that the Commonwealth was not required to reveal the identity of the CI, sustaining the Commonwealth's assertion of a privilege under Kentucky Rule of Evidence (KRE) 508(a). The trial court found that Detective Newman had no reason to doubt the informant's reliability, that the CI was still performing confidential work for the police, and that revealing the CI's identity would compromise ongoing investigations, possibly putting the CI's life in danger.

Hawkins then filed a pretrial motion to suppress evidence seized from his home and truck. The trial court held a hearing on the suppression motion at which Detective Newman was the only witness called by the Commonwealth. He testified that most of the information used to obtain the search warrants for

---

[1] Kentucky Revised Statutes (KRS) 218A.1412(1)(a).

[2] KRS 218A.1421.

[3] KRS 532.080.

2

Hawkins's property had come from the CI. On cross-examination, Detective Newman mentioned the CI's real name. The trial court found that Detective Newman's disclosure was accidental, ordered the clerk to seal the portion of the hearing that contained this disclosure, and admonished those present in the courtroom to not discuss outside the courtroom what they had heard. At the end of the suppression hearing, the trial court reaffirmed its prior ruling that the CI's identity was subject to the Commonwealth's privilege and the defense would not be permitted to call the CI as a witness at the suppression hearing or at trial.

During cross-examination at trial, Hawkins elicited testimony from David Hack, director of the laboratory that performed the drug testing in this case, who testified that the lab did not conduct an analysis of the purity of the cocaine in the substance seized from Hawkins and that it was rare to do so.

At the close of the evidence at trial, Hawkins moved for a directed verdict on the trafficking charge. He argued that the Commonwealth failed to introduce evidence Hawkins had trafficked in four grams or more of cocaine because there was no purity test conducted for purposes of measuring the weight of the cocaine. The trial court denied the directed-verdict motion, and the jury convicted Hawkins of first-degree trafficking in a controlled substance (cocaine, four grams or more), trafficking in marijuana (over eight ounces), and of being a first-degree PFO. Accepting the jury's recommendation, the trial court sentenced him to an enhanced sentence of seventeen years' imprisonment for the trafficking in cocaine as a first-degree PFO and an enhanced sentence of ten years' imprisonment for trafficking in marijuana as a first-degree PFO and

3

ordered the two sentences to run concurrently. Final judgment was entered accordingly.

Hawkins appealed the judgment to the Court of Appeals. He argued to that court and now to this Court that the trial court committed two errors: (1) the failure to compel disclosure of the CI's identity and (2) failure to direct a verdict of acquittal of the first-degree trafficking in cocaine (four grams or more) charge, due to the Commonwealth's failure to offer any proof of the presence of four or more grams of *pure* cocaine.

A divided panel of the Court of Appeals affirmed the judgment. It upheld the trial court's ruling that the Commonwealth should not be compelled to disclose the identity of the CI and that Hawkins was not entitled to a directed verdict on his trafficking charge because the law does not require proof of the actual weight of pure cocaine to secure a conviction under the first-degree trafficking statute.

## II. ANALYSIS.

### A. Standard of Review

The standard of review is different for each of the alleged errors in this appeal. The trial court's ruling denying Hawkins the ability to reveal the identity of the CI we analyze under an abuse-of-discretion standard.[4] Hawkins's claim that he was entitled to a directed verdict on the cocaine

---

[4] *See Heard v. Commonwealth,* 172 S.W.3d 372 (Ky. 2005); *Taylor v. Commonwealth,* 987 S.W.2d 302 (Ky. 1998).

4

trafficking charge requires us to conduct a statutory analysis, which we perform de novo.[5]

## B. Cocaine Purity

The Commonwealth argues that the issue involving the purity of the cocaine is not preserved for our review, as Hawkins was not entitled to a directed verdict of acquittal of all lesser-included charges related to the cocaine trafficking under the evidence adduced at trial. And when Hawkins failed to object to the trial court's jury instruction on first-degree trafficking, four grams or more, the Commonwealth asserts he failed to preserve the issue for appeal.[6] We agree with the Commonwealth that Hawkins did not properly preserve this issue. Having lost the directed-verdict motion, Hawkins should have objected to the giving of a jury instruction for trafficking in four grams or more of cocaine.[7] But Hawkins asks alternatively for palpable error review, which we apply today.

We review unpreserved errors under RCr 10.26,[8] under which we may grant relief upon a showing of "palpable error."[9] A finding of palpable error requires a showing that the alleged error affected the "substantial rights" of a

---

[5] *Bob Hook Chevrolet Isuzu, Incorporated v. Commonwealth Transportation Cabinet*, 983 S.W.2d 488, 490 (Ky. 1998) ("The construction and application of statutes is a matter of law and may be reviewed de novo.").

[6] In addition to first-degree trafficking in cocaine, four grams or more, the trial court gave lesser-included offense instructions on first-degree trafficking in a controlled substance, less than four grams, and first-degree possession of a controlled substance.

[7] *Kimbrough v. Commonwealth*, 550 S.W.2d 525, 529 (Ky. 1977) ("When the evidence is insufficient to sustain the burden of proof on one or more, but less than all, of the issues presented by the case, the correct procedure is to object to the giving of instructions on those particular issues.").

[8] Kentucky Rules of Criminal Procedure 10.26.

[9] *Id.*

5

defendant, for whom relief may be granted "upon a determination that manifest injustice has resulted from the error."[10]

When weighing the Court of Appeals' holding involving statutory construction, we apply a de novo standard.[11] Hawkins asserts that a conviction of trafficking in four grams or more of cocaine requires the Commonwealth to prove he was in possession of four grams or more of pure cocaine, and because the Commonwealth did not produce any evidence as to the purity of the cocaine weighed, that he should have been entitled to a directed verdict. In a split opinion, the Court of Appeals majority held that the plain language of KRS 218A.1412, paired with the definition of *cocaine* in KRS 218A.010(5), creates a statutory scheme whereby the Commonwealth is not required to prove that pure cocaine accounted for the weight of four grams or more. We agree with the majority of that court.

Hawkins was convicted under KRS 218A.1412(1)(a), trafficking in cocaine four grams or more. The pertinent part of the statute reads as follows:

> (1) A person is guilty of trafficking in a controlled substance in the first degree when he or she knowingly and unlawfully traffics in:
> (a) Four (4) grams or more of cocaine;
> (b) ...;
> (e) Any quantity of a controlled substance specified in paragraph (a), (b), or (c) of this subsection in an amount less than the amounts specified in those paragraphs.
> (2) ...;
> (3) (a) Any person who violates the provisions of subsection (1)(a) ... of this section shall be guilty of a Class C felony for the first offense and a Class B felony for a second or subsequent offence.
> (c) Any person who violates the provisions of subsection 1(e) of this section:
> (1) Shall be guilty of a Class D felony for the first offense and a Class C felony for a second or subsequent offense[.]

---

[10] *Id.*

[11] *Bob Hook Chevrolet Isuzu, Incorporated*, 963 S.W.2d at 490.

*Cocaine* is defined in KRS 218A.010(5) as, "a substance containing any quantity of cocaine, its salts, optical and geometric isomers, and salts of isomers."

Again, Hawkins argues that this Court should read the statutes as requiring that the weight refers to "pure" cocaine—exclusive of cutting agents and other foreign substances. We disagree.

In our analysis, we turn first to our principles of statutory construction:

> In construing statutes, our goal, of course, is to give effect to the intent of the General Assembly. We derive that intent, if at all possible, from the language the General Assembly chose, either as defined by the General Assembly or as generally understood in the context of the matter under consideration. *Osborne v. Commonwealth,* 185 S.W.3d 645 (Ky. 2006). We presume that the General Assembly intended for the statute to be construed as a whole, for all of its parts to have meaning, and for it to harmonize with related statutes. *Hall v. Hospitality Resources, Inc.,* 276 S.W.3d 775 (Ky. 2008); *Lewis v. Jackson Energy Cooperative Corporation,* 189 S.W.3d 87 (Ky. 2005). We also presume that the General Assembly did not intend an absurd statute or an unconstitutional one. *Layne v. Newberg,* 841 S.W.2d 181 (Ky. 1992). Only if the statute is ambiguous or otherwise frustrates a plain reading, do we resort to extrinsic aids such as the statute's legislative history; the canons of construction; or, especially in the case of model or uniform statutes, interpretations by other courts. *MPM Financial Group, Inc. v. Morton,* 289 S.W.3d 193 (Ky. 2009); *Knotts v. Zurich,* 197 S.W.3d 512 (Ky. 2006); *Stephenson v. Woodward,* 182 S.W.3d 162 (Ky. 2005).[12]

Here, the statute is not ambiguous, therefore, we need not look to legislative intent. KRS 218A.010(5) defines cocaine as, "a substance containing any quantity of cocaine, its salts, optical and geometric

---

[12] *Shawnee Telecom Res., Inc. v. Brown,* 354 S.W.3d 542, 551 (Ky. 2011).

7

isomers, and salts of isomers." To interpret the statute as Hawkins would suggest, we would have to hold that the legislature did not mean "mixture" when it used the word "substance" in the definition. However, that interpretation would go against the statute's plain meaning and fail to construe it in a way "for all of its parts to have meaning."[13]

The statute clearly defines "a substance *containing any quantity of cocaine*" as cocaine.[14] It is impossible to give effect to the words "containing any quantity of cocaine" if the definition is read to apply *only* to pure cocaine. It goes without saying that pure cocaine contains a quantity of cocaine. This definition was not meant to be read so narrowly, though. By its own words, it includes a substance containing *any quantity* of cocaine. Any other interpretation strains the plain meaning of the statute.

In the current case, the forensic analysis was of a solid appearing to be crack cocaine weighing 5.475 grams. Webster's Dictionary defines *substance* as "b. a material of a particular kind or constitution." *Webster's II New Riverside University Dictionary* (1984) (emphasis added). The "constitution" of the solid in this case included both pure cocaine and cutting agents. The key is that the solid contained "any quantity of cocaine," as required by the statute. Combining Webster's definition of substance with the definition of cocaine found in the statute makes it

---

[13] *Id.*

[14] KRS 218A.010(5).

clear that the entirety of the solid tested must be considered cocaine—not only those amounts that are "pure."

For these reasons, the Court of Appeals' opinion is affirmed as to this alleged error.

## C. KRE 508

Because we are asked to review an evidentiary ruling, we review the trial court's decision for abuse of discretion.[15] KRE 508 grants the Commonwealth the privilege to refuse to disclose the identity of a confidential informant, but the privilege is not indefinite.[16] If a defendant makes a prima facie case that the informant's identity "is relevant ... to the defense of an accused, or is essential to a fair determination of a cause," the CI's identity should be revealed.[17]

When deciding whether to reveal the identity of a CI, the trial court follows a procedure set forth in *Heard v. Commonwealth*:[18] "[the] defendant must first make a proper showing that an exception [to the Commonwealth's privilege] applies."[19] If the defendant makes a showing that one of the exceptions applies then "the burden shifts to the Commonwealth to overcome this inference."[20] Factors a court "would normally consider include whether the

---

[15] *Goodyear Tire and Rubber Company v. Thompson*, 11 S.W.3d 575, 577 (Ky. 2000) ("[A]buse of discretion is the proper standard of review of a trial court's evidentiary rulings.").

[16] *Heard*, 172 S.W.3d 372.

[17] *Id.*

[18] *Id.*

[19] *Id.* at 374.

[20] *Id.*

9

informant's life would be in danger were his identity revealed or if he is needed for other undercover work..."[21]

In the case at hand, the trial court properly conducted a *Heard* analysis and did not abuse its discretion in its conclusion. When Hawkins moved to have the CI's name revealed, the trial court held a hearing on the motion. The hearing was conducted in chambers where Detective Newman, under oath, was questioned about the CI. During his in-chambers testimony, Detective Newman testified that the CI had been an informant for over one year, had been used in multiple narcotics cases, had always been found reliable, had several felony convictions himself, and the information he had provided for warrant purposes had proved to be consistently accurate. Furthermore, Detective Newman testified that the CI was still performing confidential work for the police on multiple cases and exposing his or her identity would compromise the investigations and put the CI's life in danger. Having properly weighed the testimony of Detective Newman and the surrounding facts, the trial court withheld disclosure of the CI's identity.

Hawkins argues that denying his ability to call the CI as a witness prevented him from examining a material witness and cites *Burks v. Commonwealth* to support the position, "when an informer participates or places himself in the position of observing a criminal transaction he ceases to be merely a source of information and becomes a witness."[22] But those are not the facts today. The CI was not a witness to the crime charged, rather the

---

[21] *Id.*

[22] *Burks v. Commonwealth,* 471 S.W.2d 298, 301-02 (Ky. 1971).

10

trafficking charge was based on the drugs found upon the execution of the search warrants, and therefore the CI was not a material witness to the crime charged.[23]

Hawkins further asserts that the inadvertent disclosure of the CI's name during the suppression hearing operated as a waiver of the Commonwealth's ability to assert its privilege. After review of the record, we agree with the Court of Appeals that this argument was never presented to the trial court and it is therefore unpreserved. As a result, we will not delve into the argument made today about the witness's inadvertent disclosure resulting in waiving the Commonwealth's privilege.

Furthermore, Hawkins does not have a valid claim under the Confrontation Clause to call the CI as a witness at his suppression hearing. It has been stated that, "The main purpose of confrontation is to insure the right of cross-examination and protect the accused from conviction by means of ex parte testimony or affidavits given in his absence. It is a rule concerned with the method by which evidence is produced during trial."[24] Our holding is supported by *Thompkins v. Commonwealth* where we stated, "The Confrontation clause does not give a defendant the right to discover the identity of an informant at a pretrial hearing under the guise of attacking his/her reliability."[25] Hawkins had ample ability to question Detective Newman about the CI at the suppression hearing, including the fact that the CI was a

---

[23] *Taylor v. Commonwealth*, 987 S.W.2d 302, 304 (Ky. 1998) ("The informant in this case was not a material witness to the crimes charged ... the informant was not present or near the vehicle when the charged crime was committed.").

[24] *Harris v. Commonwealth*, 315 S.W.2d 630, 632 (Ky. 1958) (citations omitted).

[25] *Thompkins v. Commonwealth*, 54 S.W.3d 147, 152 (Ky. 2001).

11

convicted criminal and had been paid in the past for the information he provided against others.

As a result of the careful steps taken by the trial court, we find no abuse of discretion.

## III.    CONCLUSION

For the foregoing reasons we affirm the Court of Appeals.

All sitting.  Cunningham, Hughes, Keller, VanMeter, Venters and Wright, JJ., concur.  Minton, C.J., concurs in part and dissents in part by separate opinion.

MINTON, C.J., CONCURRING IN PART AND DISSENTING IN PART:  I fully concur with the majority's holding in regard to the confidential informant, but I must dissent from the majority's reading of KRS 218A.1412(1)(a) because it allows prosecution for trafficking in cocaine without proof of the quantity of pure cocaine involved.

Hawkins was convicted under KRS 218A.1412(1)(a), trafficking in cocaine four grams or more. The statute provides, "A person is guilty of trafficking in a controlled substance in the first degree when he or she knowingly and unlawfully traffics in ... four (4) grams or more of cocaine."[26] *Cocaine* is defined in KRS 218A.010(5) as, "a substance containing any quantity of cocaine, its salts, optical and geometric isomers, and salts of isomers."[27]

---

[26] KRS 218A.1412(1)(a).

[27] KRS 218A.010(5).

12

I am persuaded by Hawkins's argument that *substance*, as used in this statute, is not the same as *mixture*. Included in the dictionary definition of *substance* is "matter of particular or definite chemical constitution."[28] Hawkins argues the definite chemical structure required is actual cocaine. This definition of *substance* supports Hawkins's argument that when the General Assembly defined *cocaine* using the term *substance*, it did so for the purpose of punishing more severely those persons trafficking in larger quantities of the actual narcotic cocaine, and not the cutting agents used in the final product.

As the majority reads the statute, *substance* is interchangeable with *mixture*. So the presence of any traceable amount of cocaine, no matter how small, allows the aggregate weight of the product is to be used to enhance the severity of the charge and penalty to be imposed, leading to what I believe is an absurd result.[29]

It is worth noting, when defining *marijuana* under KRS 218A.210(21), the General Assembly explicitly used the term *mixture*.[30] *Marijuana* is defined as "...every compound, manufacture, salt, derivative, *mixture*, or preparation of the plant, its seeds or resin or any compound, *mixture*, or preparation which contains any quantity of these substances."[31] In the same definitions section, the General Assembly did

---

[28] *Substance*, Merriam-Webster Dictionary (11th ed. 2003).

[29] *Layne v. Newberg*, 841 S.W.2d 181, 183 (*citing Overnite Transportation Company v. Gaddis* 793 S.W.2d 129 (Ky. Ct. App. 1990)) (As a court we should not read a statute "in such a manner as to render [its] application an absurdity.").

[30] KRS 218A.210(21).

[31] *Id.*

13

not include *mixture* when defining cocaine. It is not illogical then to conclude that when defining two terms in the same section, the General Assembly was aware of the range of words it could use and purposely omitted the word *mixture* in defining cocaine.

The definition of *cocaine* and the statute pertaining to trafficking drugs was revised by HB 463, a comprehensive statutory revision aimed at reducing the rising costs associated with the burgeoning population of state prisoners serving sentences for low-level drug possession.

In furtherance of this goal, lowering the prison population, the General Assembly heard from and studied plans implemented in other states. Representatives of other states that had passed legislation with the same goal gave guidance to the General Assembly, three of the states explicitly discussed on the General Assembly floor were Texas, South Carolina, and Kansas.[32] Each of these states revamped their drug laws and specifically indicated in their statutes that when weighing the drugs recovered, that the weight was to be taken as the aggregate weight.[33] Each of these states was clear in their purpose to include the aggregate weight, and the General Assembly was aware of the approach taken by these states. After study of these states and their statutes, the General

---

[32]KET Archived Legislative Coverage, Senate Chambers-February 28, 2011, 1:37:28,
https://www.ket.org/legislature/?archive&program=WGAOS&epoch=2011&nola=WGAOS+012113.

[33] SC ST §44-53-370(e)(2) ("ten grams or more of cocaine or any mixtures containing cocaine..."); V.T.C.A. §481.112 ("aggregate weight, including adulterants or dilatants...."); KS ST 21-5705(g) ("the total amount of any substances, including a compound or a mixture, which contains any quantity of a controlled substance or controlled substance analog.").

14

Assembly chose not to include the same language, indicating its intent not to weigh the drugs by the aggregate weight of the mixture used.

Because I believe the Commonwealth is required to prove the purity of the substance recovered by authorities, which was not done in this case, I would reverse the Court of Appeals on this point.

COUNSEL FOR APPELLANT:

Robert Chung-Hua Yang
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Bryan Darwin Morrow
Assistant Attorney General

15