# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: FEBRUARY 20, 2020
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2018-SC-000398-MR

ELIJAH MESSER          APPELLANT

ON APPEAL FROM KNOX CIRCUIT COURT
V.      HONORABLE DAVID L. WILLIAMS, SPECIAL JUDGE
NO. 14-CR-00084-001

COMMONWEALTH OF KENTUCKY          APPELLEE

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

Elijah Messer appeals from the Knox Circuit Court's judgment convicting him of complicity to second-degree manslaughter, complicity to first-degree robbery, and of being a second-degree persistent felony offender. Messer presents one claim of error. He contends the circuit court erred when it denied his request for the jury to be instructed on facilitation. Finding the evidence did not support the requested instruction, we affirm the Knox Circuit Court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

In the early morning of May 9, 2014, Patrick Baker and Christopher Wagner, armed and impersonating police officers, broke into the residence of Donald Mills, a known drug dealer, demanding drugs and money. Mills was shot and died shortly afterward. Messer was indicted by a Knox County grand

jury for murder, complicity to commit robbery in the first degree, and being a persistent felony offender in the second degree. At trial, the jury heard testimony about the role Messer played in Mills's death.

Two days prior to Mills's death, Messer, who had known Mills all his life, took Stephanie Smith, who he had known for twenty years, and Patrick Baker to Mills's residence to buy oxycodone. A purchase was made, but Mills did not have the quantity they wanted to buy. Mills told them he would have more in a day or two. Messer testified that Baker and Smith wanted to rob Mills at that point, but he told them "not to because [he] didn't want to be there and involved in it at that time." Messer also testified that later that night while partying, he heard Smith talking with another person about robbing Mills. Baker and Smith dropped Messer off at his house the next day.

On May 8, 2014, Christopher Wagner was dropped off at Baker's house after getting off work. Wagner had known Baker about fifteen to sixteen years. Wagner testified that without mentioning any names, Baker told him that he had met a guy and that they talked about robbing another guy. Baker and Wagner then went to a dollar store where Baker bought items including plastic handcuffs. They next went to Smith's house. After that, they went to a trailer belonging to Adam Messer, Elijah's brother. It was there that Wagner met Elijah Messer and Adam Messer for the first time. Angela Mills, Elijah's girlfriend; Angela's daughter; and Adam's girlfriend, Beth, were also at Adam Messer's home.

2

Wagner testified that he overheard Messer and Baker talking about robbing Mills and they planned the robbery while there. Messer told Baker how easy it would be, how Mills didn't own any weapons, and that if Baker did not rob Mills, he would find someone who would. Messer and Baker said that Mills had about $200,000 cash and 1500 oxycodone pills.

Baker pulled up on a computer an aerial view of Mills's property. Messer told Baker that he knew where Mills lived and that he did not need to see the map. Messer described the layout of the home and its occupants, and stated that Mills's wife would be gone to work.[1] Messer offered to drive Baker and Wagner in Baker's truck to Mills's house, but Baker refused the offer. Messer then planned to drive his brother's truck, but Adam Messer stated that only Angela could drive it. Wagner knew when he left Adam Messer's home about 4:00-4:30 a.m. that he and Baker were going to steal money and drugs from Mills. On the road to Mills's home, Baker and Wagner pulled off to cover the truck's license plate. Angela and Messer pulled up during that time.

Angela Mills testified that she was at Adam Messer's home on the night of May 8, 2014. When Baker and Wagner arrived, Messer asked her to take her daughter and Beth into a bedroom. Angela did not hear any conversation about robbing Mills. When she and Messer left Adam Messer's home, she drove them to her home for cigarettes. Messer then directed her to drive up the road leading to Mills's residence. Angela drove past Baker and Wagner who

---

[1] Mills's wife and children, and another child, were at the residence when the robbery occurred.

were stopped on the side of the road. At Messer's direction, Angela pulled off in the field near Mills's home and while there, she and Messer smoked methamphetamine.

Angela got out of the truck and heard gunshots. She wanted to leave but Messer did not. Angela and Messer did not leave the field until Baker and Wagner sped by. At Messer's direction, Angela pursued Baker and Wagner and tried to get them to stop by blowing her horn and flashing her lights. Messer wanted to use Angela's pistol to shoot at Baker and Wagner, but she would not let him. Baker and Wagner were supposed to go back to Adam Messer's home, but they did not. When Baker and Wagner finally stopped, she heard Messer ask them, "Did you get it?"

Wagner also testified that when Baker stopped, Messer asked what happened and what they got. Baker complained that unlike what Messer told him, the robbery was not easy because Mills pulled a gun on him. Baker also stated they did not get anything because "it all broke loose." Wagner testified that Baker took from a dresser drawer a bag of pills, thought perhaps to be Neurontin, and five oxycodone pills, one of which he gave to Wagner.

Messer testified in his defense. He stated that after the visit to Mills's home, he did not think Baker would be back. Messer described Baker arriving at the trailer on the evening of May 8; Baker attempting to introduce the person Baker brought with him and Messer refusing the introduction; and Baker displaying on a laptop a map of Mills's home, at which point Messer told

4

Baker he did not need to know where Mills lived because he had known Mills all his life.

While they partied and got high on methamphetamine, Baker talked about robbing Mills. Messer testified that he probably talked about robbing Mills, too, but he could not remember what all he said. When Baker and Wagner were leaving, Messer told them he would meet them afterward and see what happened. While parked in the field near Mills's home, and having smoked methamphetamine while there, Messer did not know whether to believe Angela when she told him she heard gunshots.

Messer testified that he directed Angela to follow Baker and Wagner; that he probably had Angela flash her lights and blow her horn to get Baker to stop; and that when they pulled over, Baker stated he had to shoot Mills because Mills was going to kill him. Messer stated that he asked Baker what happened, but he did not recall asking Baker what he got. Messer further testified that although he followed Baker and Wagner to Mills's home, he would not have asked what they got because "[he] didn't think they would do it."

The jury also heard Messer's recorded interview with police. Messer stated that he was to get a 25% cut of the proceeds of the robbery. He also admitted that he felt he got shorted in the deal.[2]

The jury found Messer guilty of complicity to second-degree manslaughter, complicity to first-degree robbery and being a second-degree

---

[2] The Commonwealth presents these facts in its counterstatement of the case and Messer has not disputed them.

persistent felony offender. The jury recommended Messer serve an enhanced sentence of fifty years in prison on the robbery conviction and an enhanced sentence of twenty years on the manslaughter conviction concurrently for a total sentence of fifty years. The trial court sentenced Messer accordingly, and this appeal followed.

## ANALYSIS

Messer raises one issue on appeal. He contends that the trial court erred by denying his requested jury instruction on the lesser included offense of facilitation.[3,4]

"The trial court is required to instruct the jury on the 'whole law of the case, and this rule requires instructions applicable to every state of the case

---

[3] The first-degree robbery instruction stated:

You will find [Elijah James Messer] guilty of Robbery in the First Degree under this Instruction if, and, only if, you believe from the evidence beyond a reasonable doubt all of the following:
  A. That in this county on or about the 9th day of May, 2014, and before the finding of the Indictment herein:
    1) A person stole controlled substances from Donald Mills;
    2) That in the course of so doing and with the intent to accomplish the theft, that person used or threatened the immediate use of physical force upon Donald Mills;
    3) That when he did so, that person was armed with a firearm;
    4) That the firearm the person was armed with was a deadly weapon as defined under Instruction No. 2;
    5) That prior to the robbery, [Elijah James Messer] was complicitous by soliciting, counseling, commanding or engaging in a conspiracy with that person to rob Donald Mills;
    And
    6) That [Elijah James Messer] intended for that person to rob Donald Mills.

[4] Pertinently, the murder, manslaughter in the second degree, and reckless homicide instructions included the findings that "A person killed Donald Mills by gunshot" and "That prior to the killing, [Elijah James Messer] was complicitous by soliciting, counseling, commanding or engaging in a conspiracy with that person to rob Donald Mills."

deducible or supported to any extent by the testimony.'" *Murphy v. Commonwealth*, 509 S.W.3d 34, 48 (Ky. 2017) (quoting *Taylor v. Commonwealth*, 995 S.W.2d 355, 360 (Ky. 1999)). It follows that a lesser included offense instruction must be given if it is supported by the evidence. *Yarnell v. Commonwealth*, 833 S.W.2d 834, 837 (Ky. 1992) (citations omitted). However, "[a]n instruction on a lesser included offense is appropriate if, and only if, on the given evidence a reasonable juror could entertain a reasonable doubt of the defendant's guilt on the greater charge, but believe beyond a reasonable doubt that the defendant is guilty of the lesser offense." *Osborne v. Commonwealth*, 43 S.W.3d 234, 244 (Ky. 2001) (citations omitted).

On review, we consider whether the trial court erred by refusing to give a lesser included offense instruction under the "reasonable juror standard." Under that standard, the proponent is entitled to the instruction, if, viewing the evidence in his favor, the evidence would permit a reasonable juror to make the finding the instruction authorizes. *Springfield v. Commonwealth*, 410 S.W.3d 589, 594 (Ky. 2013). In this case, we review whether a reasonable juror would have been able to convict Messer of facilitation to robbery or facilitation to murder based upon the evidence presented.[5] *See id.* at 595.

KRS[6] 502.020 provides the elements required to be proved in order to find a defendant guilty of complicity. It states, pertinently:

---

[5] Messer did not tender a proposed facilitation instruction.
[6] Kentucky Revised Statute.

7

1) A person is guilty of an offense committed by another person when, with the intention of promoting or facilitating the commission of the offense, he:
    (a) Solicits, commands, or engages in a conspiracy with such other person to commit the offense; or
    (b) Aids, counsels, or attempts to aid such person in planning or committing the offense . . . .

In comparison, KRS 506.080(1) states that a person is guilty of criminal facilitation "when, acting with knowledge that another person is committing or intends to commit a crime, he engages in conduct which knowingly provides such person with means or opportunity for the commission of the crime and which in fact aids such person to commit the crime."

At trial, the basis of Messer's request for the instruction on the lesser included offense of facilitation was that his involvement was so minimal that the jury could find facilitation. Citing *White v. Commonwealth,* 178 S.W.3d 470 (Ky. 2005), the trial court denied the instruction. On appeal, Messer cites *Luttrell v. Commonwealth,* 554 S.W.2d 75, 79 (Ky. 1977); *Skinner v. Commonwealth,* 864 S.W.2d 290, 298 (Ky. 1993); *Chumbler v. Commonwealth,* 905 S.W.2d 488, 498-99 (Ky. 1995); *Webb v. Commonwealth,* 904 S.W.2d 226, 228 (Ky. 1995); *Perdue v. Commonwealth,* 916 S.W.2d 148, 160 (Ky. 1995); *Thompkins v. Commonwealth,* 54 S.W.3d 147, 150 (Ky. 2001); and *White,* 178 S.W.3d at 489-90 (quoting *Thompkins*), to support his argument that because the principal difference between complicity and facilitation is the state of mind of the defendant, and because there was no testimony that Messer would

receive or did receive anything from the robbery,[7] the jury could have believed that Messer waited in the field and flagged down Baker and Wagner after the robbery only to hear what happened and did not care if the robbery actually took place. Thus, the jury could have found Messer merely facilitated or aided the robbery when Messer provided Baker and Wagner with "means and opportunity" to commit the robbery by discussing the robbery with them, *i.e.*, how much money and pills were at Mills's house, the layout of Mills's house, who would be home, and offering to drive Baker and Wagner to Mills's home, and that conduct in fact aided Baker and Wagner to commit the crime.

As explained or alluded to in the cited cases, a principal difference between KRS 502.020's complicity and KRS 506.080's facilitation elements is the mental state associated with the offenses. In particular, often-cited *Thompkins v. Commonwealth* states:

> Under either statute, the defendant acts with knowledge that the principal actor is committing or intends to commit a crime. Under the complicity statute, the defendant must intend that the crime be committed; under the facilitation statute, the defendant acts without such intent. Facilitation only requires provision of the means or opportunity to commit a crime, while complicity requires solicitation, conspiracy, or some form of assistance. Facilitation reflects the mental state of one who is wholly indifferent to the actual completion of the crime.

54 S.W.3d at 150 (internal citations and quotation marks omitted).

---

[7] Although there was no live witness testimony to this effect, as noted above the Commonwealth introduced Messer's interview with police into evidence. Even though the recording is somewhat difficult to understand, the Commonwealth offered it to show that Messer expected to receive part of the robbery proceeds.

Because the "the jury may believe all of testimony of either or any one of witnesses in whole or in part," *Cheatham v. Chabal*, 192 S.W.2d 812, 814 (Ky. 1946), "[a]n instruction on a lesser included offense requiring a different mental state from the primary offense is unwarranted unless there is evidence supporting the existence of both mental states," *Taylor v. Commonwealth*, 995 S.W.2d 355, 362 (Ky. 1999). *White*, relied upon by the trial court, explains that when a defendant seeks a facilitation instruction as a lesser included offense of complicity, in order for that instruction to be given, affirmative evidence that the defendant did not intend that the crime be committed, or that he was wholly indifferent to the actual completion of the crime, must be introduced. 178 S.W.3d at 490-91.

When presented with a complicity instruction, the jury may disbelieve the evidence supporting a finding that the defendant intended the crime be committed and consequently find the defendant not guilty of complicity. 178 S.W.3d at 490 (quoting *Cheatham*, 192 S.W.2d at 814). However, the possibility that the jury will disbelieve the complicity "intent" evidence cannot suffice to support a facilitation instruction. *Id.* Or stated another way, the defendant cannot simply rely on the jury's disbelief of the complicity evidence that he intended the crime be committed to support a facilitation instruction. Such disbelief does not constitute evidence of the lesser mental state required for a facilitation instruction. *Id.* If it did, the jury's potential disbelief that the defendant intended the crime be committed would require a facilitation instruction in every case in which a defendant is charged with complicity, and

10

such an approach is improper. *Id.* Because a lesser included offense instruction is available only when supported by the evidence, a facilitation instruction must be supported by affirmative evidence that the defendant did not intend the crime be committed. *Id.*

Messer's argument, as noted above, is that because there was no testimony that Messer would receive or did receive anything from the robbery, the jury could have believed he did not care if the robbery actually took place, and therefore, he was entitled to a facilitation instruction. Messer does not identify, nor does our review identify, however, any affirmative evidence that Messer was wholly indifferent to the commission of the robbery. The jury was presented with evidence that Messer knew about the impending robbery, and he intended the robbery be committed, but was not presented with affirmative evidence that Messer did not care one way or the other that the robbery was completed. Without such evidence, a reasonable jury could not entertain a reasonable doubt of Messer's guilt on the greater complicity offenses, but believe beyond a reasonable doubt that Messer was guilty of the lesser included facilitation offenses. Consequently, because the evidence either portrayed Messer as an accomplice (*i.e.*, a solicitor, a counselor, and/or a conspirer) in the robbery of Mills or as being not guilty of complicity, the trial court properly instructed the jury on complicity only.

The issue before the Court is disposed of based upon no affirmative evidence being introduced at trial to prove Messer did not intend the robbery to be committed. We leave to another day the argument that a defendant merely

11

facilitates a robbery or provides the "means or opportunity" to commit the robbery by providing relevant information about the target and offering to drive the principal actors to the target's home.

## CONCLUSION

For the foregoing reasons, the Knox Circuit Court judgment is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Roy Alyette Durham, II
Assistant Public Advocate
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Daniel Jay Cameron
Attorney General of Kentucky

Micah Brandon Roberts
Assistant Attorney General
Office of Criminal Appeals